UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ERIC J. ROBERTS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:18-CV-183-X |
| v. | § | |
| | § | |
| DALLAS INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Roberts claims that the Dallas Independent School District (Dallas ISD) demoted him and terminated his employment in violation of the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, *amended* 42 U.S.C. Sec. 2000-e, *et seq.*, 42 U.S.C. §§ 1981, 1983, and under Chapter 21 of the Texas Labor Code. Dallas ISD moved for summary judgment [Doc. No. 48], and that motion is now ripe. For the following reasons, the Court **GRANTS** Dallas ISD's motion for summary judgment on all counts and **DISMISSES** this action **WITH PREJUDICE**.

### I. FACTS

### A. SUMMARY

Roberts, who is African-American, was promoted by Chief Craig Miller of the Dallas ISD's Police Department ("Department") to Lieutenant in 2014. Roberts served as Lieutenant until his two-rank demotion to the rank of police officer on April

1

12, 2017 for insubordinately shouting at his superior officer and physically moving towards him in a threatening manner. The Department fired Roberts five months later because he destroyed evidence.

## B. BACKGROUND

In 2012, approximately five years before Roberts was demoted and terminated, the Department passed over Roberts for promotion to Lieutenant. After Roberts was not promoted to lieutenant in 2012, Chief Miller, trying to make Roberts feel better, "used an analogy" about when he (Chief Miller) "did not get promoted because of affirmative action" and purportedly "stated that African-Americans and Hispanics were promoted ahead of him [Chief Miller] because of the affirmative action."[1] Miller explained that he spoke with Roberts about this to "let him know he [Roberts] still had a bright future with Dallas ISD PD and would be up for promotion again in the future."[2] Roberts was subsequently promoted to Lieutenant in 2014.

In late September 2016, Assistant Chief Hodges's 50th high-school anniversary was coming up. After an incident at Assistant Chief Hodges's high school, Hodges exchanged the following messages with Chief Miller and Sergeant Clicque of the Department:

| | |
|---|---|
| **Asst. Chief Hodges**: | That's my homeboys! |
| **Sgt. Clicque**: | Lol |
| **Asst. Chief Hodges**: | 50 year reunion next week. I wonder if we could get them to stage a drive-by for us. |
| **Chief Miller**: | Gangsta style |
| **Asst. Chief Hodges**: | So proud of all the changes |

---

[1] App. 789 at 76:6- 21.

[2] App. 612, ¶ 55

2

On October 10, 2016, the Department held a Command Staff meeting next to Chief Miller's office unrelated to anything involving these text messages. Among those in attendance was Roberts. During this meeting Roberts initiated an argument regarding what he believed was the over-charging of an African-American high school student who had threatened to blow-up several Dallas ISD schools with a bomb. Overhearing Roberts, Chief Miller entered the conference room with information and documents contradicting Roberts's contentions.

According to a witness, Roberts was trembling and shaking his fist on the desk, refused to accept Miller's timeline of events, and yelled: "Might I remind you, this is an African-American male?"[3] During this back-and-forth, Roberts was so loud that Chief Miller's administrative assistant closed the conference room door. Toward the end of the confrontation, Chief Miller struck his fist firmly against the table in what Assistant Chief Jason Rodriguez considered an attempt to call everyone to order and end the argument.[4] In response, Roberts rose to his feet, pounded his own fist on the conference room table, and shouted: "No one slams their fists at me[.]"[5] Roberts then reportedly "abruptly rose from the table where he was seated and moved toward" Chief Miller, while two other officers attempted to place themselves in between Roberts and Chief Miller. Rodriguez escorted Roberts out of the meeting. While being escorted out, Roberts pointed at Chief Miller and said, "[T]his is what's wrong with our country," before exiting the room. One of the other officers present at the

---

[3] App. 53; see also App. 63-64; App. 473, ¶ 24; App. 603-04, ¶¶ 30-31.
[4] DN50 App. 604, ¶ 32, App. 474, ¶ 25; App. 60-61, 63-64.
[5] DN50 App. 474 ¶ 26; App. 604, ¶ 32; App. 53, 60-61, 63-64.

Command Staff meeting filed a Department Employee Incident Report Form that same day.

Immediately after the incident, Chief Miller contacted Dallas ISD's Office of Legal Services to determine the appropriate course of action, and the process began to place Roberts on administrative leave. While that was happening, unbeknownst to Miller at the time, Roberts was on his way to the office of Dr. Cynthia Wilson, then-Chief of Staff and Chief Miller's supervisor.[6] Roberts told her of the incident but said nothing about whether he believed Chief Miller's conduct toward him was motivated by anything in particular. Miller called Wilson later that morning to inform her that Roberts was being placed on administrative leave. And Roberts was in fact placed on administrative leave later that same day.

Dallas ISD retained external counsel Locke Lord LLP to conduct an independent investigation. During the course of its independent investigation, Locke Lord interviewed approximately 10 Department officers and employees, and reviewed relevant Department and Dallas ISD Board policies (the "Locke Lord Investigation"). On January 12, 2017, Locke Lord issued its report (the "Locke Lord Report") and an Executive Summary of Investigation.

The Locke Lord Report concluded that Roberts was insubordinate toward Chief Miller at the October 10, 2016 Command Staff meeting and violated the Department Code of Conduct and Dallas ISD Board Policy requirements that all employees abide by the standards of conduct relevant to their particular job function. The Locke Lord

---

[6] Roberts alleges that this is the protected activity that led to what he alleges was retaliatory action on the part of Chief Miller and Asst Chief Hodges.

4

Report noted that four witnesses stated that Roberts was yelling at Chief Miller during the Command Staff meeting. Three witnesses stated that two officers had to physically intervene, and that Roberts had to be removed from the room. During the investigation, Roberts denied that he had yelled or been physically aggressive, but he did acknowledge that he may have been "at the edge of insubordination."[7]

The Locke Lord Report and Executive Summary were provided to a number of high-level officials in Dallas ISD's human resources department, Chief Miller, and Assistant Chief Hodges (Roberts's direct supervisor), for review. Chief Miller, Assistant Chief Hodges, and Assistant Chief Rodriguez subsequently met to discuss what disciplinary action they would recommend for Roberts based on the Locke Lord Report's findings. They all agreed that Roberts's insubordination warranted termination, but ultimately settled on recommending a two-rank demotion. This recommendation was submitted to the Dallas ISD Legal Review Committee ("Committee") by Assistant Chief Hodges and Chief Miller by on February 27, 2017. The Committee, by designation of the Superintendent, reviews and decides personnel actions. Discipline that would result in a substantive change in an employee's personnel status, such as demotions and terminations, must go through and be decided by the Committee. Any time findings are substantiated against an employee in an internal or external investigation, these findings are presented to the Committee to make a final determination of any appropriate disciplinary action.

The Committee substantiated the Locke Lord report, and not only demoted Roberts to police officer but also required Roberts to attend counseling sessions

---

[7] *Id.*

5

through the District's Employee Assistance Program. By letter dated April 12, 2017, Dallas ISD informed Roberts of its decision to demote him to the rank of police officer and its directive requiring that he attend counseling sessions before reporting to his new assignment.

On April 16, 2017, Roberts filed an internal grievance (the "Demotion Grievance"). After a series of several hearings running from April 2017 through August 2017, Roberts administrative grievance was finally and unanimously denied by a subcommittee of the Dallas ISD's Board, exhausting his administrative remedies for his demotion. During the final hearing one of the members of the subcommittee asked Roberts if he would accept a demotion by one rank to sergeant, and Roberts replied that he was not sure.

In late July 2017, while his grievance process was ongoing, Roberts returned to duty as a Department police officer. Late in the evening on July 31, 2017, Roberts was dispatched to respond to a burglary alarm at Sidney Lanier High School. At the school he encountered two teenagers, one male and one female, standing near the school cafeteria. During the encounter, Roberts discovered the female had a gun and had her hand on it. Roberts drew his weapon in response, and ordered the female to place the gun on the deck and to move away from it. The female complied.

Roberts then had both suspects lay on the ground while he secured the weapon and called dispatch to request a cover unit. Officer Astin Cyrs subsequently arrived at the scene, where she found Roberts with his weapon drawn and two suspects on the ground. Cyrs handcuffed both suspects and searched and questioned the female. Roberts searched the male suspect and discovered in his pocket two small bags of a

green leafy substance that appeared to be marijuana. Roberts confiscated the bags and secured the male suspect in the backseat of his patrol car. At some point, Officer Eugenio Garcia arrived. Garcia and Cyrs each stated the bags contained usable amounts of marijuana and that they would have arrested the male suspect for drug possession. But Roberts decided to destroy the bags' contents by grinding it underneath his foot. Roberts then released the male suspect and asked Cyrs to only issue him a criminal trespass warning. The female suspect was transported to Dallas ISD PD's dispatch and processing station where Roberts released her to her mother.

After reviewing the incident report of this encounter, Assistant Chief Hodges filed an incident report regarding Roberts' behavior. The Department then began an internal affairs investigation ("IA Investigation") of Roberts. On August 10, 2017, the investigating officers interviewed Roberts. Upon arriving for his interview, Roberts was given a written administrative warning regarding his rights. During this interview, Roberts admitted that he poured the contents of the bags on to the ground and smashed the contents with his foot.

On August 14, 2017, the investigators issued a report that substantiated the claims that Roberts destroyed evidence during the incident at Sydney Lanier in violation of Department policy, which addresses the proper collection, storage, and security of evidence and other property.

On August 23, 2017, the Committee decided to terminate Roberts's at-will employment with Dallas ISD, noting, among other things, that Roberts admitted to destroying the drugs that two other officers considered to be a usable amount. By letter dated September 5, 2017, Dallas ISD notified Roberts of his termination.

Roberts then filed grievance related to his termination. A hearing was set on October 17, 2017, and Dallas ISD assigned Assistant Chief Hodges to be the hearing officer because of his knowledge of Department procedures and related law. Roberts did not address the merits of his termination grievance at the hearing and instead spent his time objecting to Hodges's assignment as the hearing officer. Hodges denied the termination grievance.

Dallas ISD also notified Roberts of the denial of his termination grievance by letter and advised that he could appeal the decision. Roberts declined to do so. The District then notified Roberts that because he had not timely appealed the termination grievance decision, Dallas ISD was closing his termination grievance. Because Roberts never filed an appeal, the Dallas ISD Board never heard his termination grievance and objections to Assistant Chief Hodges. The decision by Roberts not to press for further administrative review of his grievance exhausted his administrative remedies with respect to his termination for destroying evidence.

## II. LAW

Before the Court is Dallas ISD's Motion for Summary Judgment [Doc. No. 48]. Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] "A fact is material if it 'might affect the outcome of the suit'" and "[a] factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict

---

[8] FED. R. CIV. P. 56(a).

for the nonmoving party.'"⁹

The summary judgment analysis is substantively identical for claims of race discrimination and retaliation under Title VII, the state law equivalent in the Texas Commission on Human Rights Act, and Section 1981 after the plaintiff makes a *prima facie* case.¹⁰ And because this is a case of circumstantial evidence, the claims are all subject to the burden-shifting framework from *McDonnell Douglas Corp. v. Green*.¹¹

To prove his discrimination *prima facia* claim, Roberts must produce evidence that he: (1) is a member of a protected class; (2) was qualified for the position he held; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of his protected group or was treated less favorably than other similarly-situated employees who were not in his protected class.¹²

To prove his retaliation *prima facia* claim, Roberts must show that: (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus existed between the protected activity and the adverse employment action.¹³ The first element of a retaliation claim requires Roberts to

---

⁹ *Thomas v. Tregre*, 913 F.3d 458, 462 (5th Cir. 2019) (alteration in original) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

¹⁰ *Roberts v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) ("The summary judgment analysis is the same for claims of race discrimination under Title VII, [and] § 1981); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n. 2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical.").

¹¹ *See Vargas v. McHugh*, 630 F. App'x 213, 216 (5th Cir. 2015) (per curiam) (describing the applicability of the *McDonnell Douglas* framework to retaliation claims); *see also San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 136-37 (Tex. 2015) (claims of retaliation under Title VII and the TCHRA fall under the same federal precedent); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001)).

¹² *See Thomas*, 913 F.3d at 462 (5th Cir. 2019) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam)); *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017).

¹³ *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *City. of Travis v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *7 (Tex. App.—Austin, May 16, 2012, no pet.) (Texas

9

demonstrate that he (1) opposed an unlawful employment practice or (2) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.[14] To demonstrate that he engaged in "protected activity," a plaintiff must show that he had a reasonable belief of, and actually opposed, an unlawful employment practice.[15]

The *prima facie* case, once established, creates a presumption of discrimination or retaliation and the "burden then shifts" to Dallas ISD to articulate "a legitimate, nondiscriminatory or nonretaliatory reason" for the adverse employment action.[16] If Dallas ISD articulates a legitimate, non-discriminatory reason for the termination, the burden shifts back to Roberts who "must put forward evidence rebutting each of the nondiscriminatory reasons [Dallas ISD] articulates."[17] For discrimination cases, Roberts may do so under one of two alternatives: the pretext alternative for his discrimination and retaliation claims, or the mixed-motive alternative for his discrimination claim.[18]

Under the pretext alternative Roberts must produce "evidence sufficient to create a genuine [dispute] of material fact that the . . . proffered explanation was a pretext for racial discrimination."[19] And an employee must show that the adverse

---

Commission on Human Rights Act claim).

[14] *Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 316 (5th Cir. 2003); *Johnson v. BAE Sys. Land & Armamaments, L.P.*, No. 3:12-CV-1790-D-BH, 2014 WL 1714487, at *14 (N.D. Tex. Apr. 30, 2014).

[15] *Byers*, 209 F.3d at 428 (Title VII); *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 137 (Tex. 2015).

[16] *McCoy*, 492 F.3d at 557.

[17] *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir.2001); *McCoy*, 492 F.3d at 557.

[18] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011).

[19] *Harville v. City of Houston, Miss.*, 945 F.3d 870, 878 (5th Cir. 2019).

action would not have occurred "but for the employer's retaliatory motive."[20] Mixed-motive is not an available method of rebuttal for retaliation claims, retaliation requiring evidence of but-for causation.[21] And Roberts does not address mixed-motives for his discrimination claims, so this case falls squarely within the "pretext" line of Title VII discrimination and retaliation cases.

## III. ANALYSIS

### A. DISCRIMINATION & RETALIATION CLAIMS[22]

The Department fired Roberts in 2017 after he admitted to destroying evidence. Roberts's termination for destroying evidence was his second adverse employment action in as many years—the first being his reduction in two ranks for acting insubordinately toward his superior during a meeting at which there were multiple witnesses.

The Court, however, assumes for the sake of argument that Roberts has made a *prima facie* showing of both racial discrimination and retaliation. At this juncture, Dallas ISD has the burden to produce evidence of a legitimate, non-discriminatory and non-retaliatory reason for reducing Roberts two ranks in April 2017 and terminating Roberts's employment in September 2017.

Dallas ISD has satisfied this obligation. Dallas ISD has provided documentation that in October 2016 there arose a reasonable and good faith basis to believe that Roberts had acted insubordinately toward a superior during a meeting

---

[20] *Feist v. La. Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

[21] *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

[22] Title VII of the Civil Rights Act of 1964, *amended* 42 U.S.C. Sec. 2000-e, et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and under Chapter 21 of the Texas Labor Code.

11

with multiple witnesses, and that Roberts admitted in August 2017 to destroying evidence in violation of Department policy that he had seized from a suspect. Dallas ISD has further produced evidence showing that insubordination and destroying evidence are the reasons that Roberts was reduced two ranks and later terminated.

Insubordination is a legitimate, non-discriminatory reason for an adverse employment action.[23] Likewise, the Fifth Circuit has held that violating company policy can be a legitimate reason for adverse employment action.[24] The Court holds that destroying evidence in violation of police department policy can constitute a legitimate, non-discriminatory and non-retaliatory reason for adverse employment action.[25]

## B. PRETEXT ARGUMENTS

Because of Dallas ISD's evidence of a non-discriminatory and non-retaliatory reason to reduce Roberts two ranks and then terminate his employment, Roberts has the burden to raise a genuine dispute of material fact that the employer's reason is pretext for discrimination. Roberts offers the following theories of pretext: (1) a text message that was not about him and sent a year before he was terminated that uses the word "gangsta"; (2) a 2012 comment by Chief Miller about how he himself had once been passed over on account of "affirmative action"; and (3) the Department applied the wrong version of its policy to Roberts; and (4) under the cat's paw theory,

---

[23] *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337 (5th Cir. 2007).

[24] *See Cervantez v. KMGP Servs. Co., Inc.*, 349 F. App'x 4 & n.17 (5th Cir. 2009) (per curiam) (citing *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006)) (violating a company policy can give rise to a nondiscriminatory reason for termination).

[25] Under certain circumstances, Texas Penal Code section 37.09 classifies destroying evidence as a third-degree felony with a minimum sentence of two years, and a maximum of ten.

the investigations into Roberts's insubordination and destruction of evidence were initiated as a result of racial animus on the part of Chiefs Miller and Hodges. The Court addresses each in turn.

### (1) TEXT MESSAGES & AFFIRMATIVE ACTION

Roberts asserts that Miller's 2012 comment about being passed over on account of affirmative action, and Hodges's September 22, 2016 text messages, wherein Hodges expressed his opinions of his high school classmates from the 1960s and how "proud" he was of his school for improving since those 1960s, is evidence of pretext. With respect to Hodges' 2016 comment, Roberts bases his assertion of pretext on Hodges's use of the word "gangsta" in the text.

A workplace remark constitutes evidence of discrimination only if it is: 1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the employment decision at issue; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.[26]

Both the 2012 comment and 2016 text messages are too vague, unrelated to the disciplinary actions, and too remote in time from the April 2017 demotion to show pretext. The 2012 remark regarding affirmative action is so remote in time that Roberts was actually promoted to Lieutenant in the time between the comment and the demotion, just as Chief Miller said he would be. The comment is also entirely unrelated to the employment decision at issue, which resulted in Roberts going from Lieutenant to Police Officer, straight past detective.

---

[26] *Jackson v. Cal–Western Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010).

Miller and Hodges's text messages were unrelated to Roberts's work conduct or his later demotion and termination. The texts were about individuals who went to high school in the 1960s—they were not about Roberts.[27] Moreover, the text messages were not proximate in time to Roberts's demotion—they were more than 6-months out from his demotion.[28] Finally, the text messages do not expressly refer to Roberts's protected class and would require a presumption to conclude that they were referring to African-Americans. Such vague or ambiguous remarks requiring inference and presumption that are purportedly related to a plaintiff's protected class are stray remarks and are not sufficient to raise a genuine dispute on the issue of whether the plaintiff was fired for the stated reasons.[29]

For these reasons, this comment and the text messages are merely stray comments and are legally insufficient to evidence pretext.

### (2) FAILURE TO FOLLOW POLICY?

Roberts argues that the Department improperly relied on its 2011 version of General Orders and Code of Conduct, and that because the January 1, 2014 General Orders and Code of Conduct were in effect, only a one-rank demotion was allowed. But as Dallas ISD's summary judgment evidence shows, although certain General Orders had been updated, the complete 2014 General Orders and Conduct of Conduct was only a draft when the Department demoted Roberts.

---

[27] *See, e.g., Sandstad v. CB Richard Ellis, Inc*, 309 F.3d 893, 897–98 (5th Cir. 2002); *Acker v. Deboer, Inc.*, 429 F. Supp. 2d 828, 840 (N.D. Tex. 2006).

[28] *See Daniels v. BASF Corp.*, 270 F. Supp. 2d 847, 854 (S.D. Tex. May 16, 2003) (comment made more than six months before alleged adverse action was not proximate in time).

[29] *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010); *Sandstad*, 309 F.3d at 897.

Regardless of the effective date of the draft, the Locke Lord findings showed that Roberts insubordination was the sort of offense for which Dallas ISD could have fired Roberts. Miller and Hodges chose instead to recommend a two-rank demotion so Roberts could keep his job. The Committee also believed a two-rank demotion was necessary based on the findings in the Locke Lord report because they did not find Roberts "fit to command other officers or to remain in any leadership position in Dallas ISD PD" and a single-rank demotion to a sergeant would have been insufficient to remove Roberts from a supervisory position. The Committee's decision to demote Roberts by two ranks was a compromise and more lenient than termination, which the Committee considered. Furthermore, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus in absence of proof that the plaintiff was treated differently than other non-minority employees because Title VII does not protect employees from the arbitrary employment practices of their employer, only their discriminatory impact."[30] Because Roberts cannot raise a fact dispute that Dallas ISD's stated reason for the demotion was false or that race discrimination was the real reason for the action, summary judgment is warranted on his discriminatory demotion claim.

### (3) THE CAT'S PAW

"[T]he discriminatory animus of a manager can be imputed to the ultimate decisionmaker if the decisionmaker 'acted as a rubber stamp, or the "cat's paw," for

---

[30] *Turner*, 476 F.3d at 346 (*quoting Upshaw v. Dallas Heart Grp.*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997)).

15

the subordinate employee's prejudice.'"[31]  Roberts's Cat's Paw theory fails because he has not provided evidence, circumstantial or otherwise, that there was anyone who possessed or acted with discriminatory animus, let alone that a biased decisionmaker improperly influenced an unbiased decisionmaker (in this case the Committee), even when that evidence is construed in a light most favorable to Roberts.

As discussed above, Dallas ISD had legitimate, non-retaliatory, and non-discriminatory reasons for its decision to demote and later terminate Roberts.  While Roberts generally disagrees with certain findings of the Locke Lord Report and the IA Investigation, Roberts has given no evidence that the Locke Lord Report or IA Investigation's findings were not the real reason the Committee voted to demote him and terminate his employment. Similarly, he has no evidence that the IA Investigation findings were not the true reason Miller recommended his termination. To the extent Roberts attempts to rely on temporal proximity as the basis of his showing of pretext, the Fifth Circuit has held that "temporal proximity standing alone is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason."[32]

## IV. CONCLUSION

Roberts has failed to introduce evidence that would enable a reasonable jury to find that the proffered reasons for his demotion and termination were not the real reasons Dallas ISD demoted and terminated him.  Even when the Court construes the evidence in a fashion most in favor of Roberts, he still raises no genuine dispute

---

[31] *Laxton v. Gap Inc*, 333 F.3d 572, 584 (5th Cir. 2003).

[32] *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008).

of fact.

Therefore, Dallas ISD's Motion for Summary Judgment [Doc. No. 48] is **GRANTED** and Roberts's complaint is **DISMISSED** with **PREJUDICE**.

**IT IS SO ORDERED** this 18th day of February 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE